# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ROSALIND MAIDEN, on behalf of herself
and others similarly situated,**

      Plaintiff,

 v.                         **Case No. 06-C-349**

**MERGE TECHNOLOGIES, INC.,
(d.b.a. MERGE HEALTHCARE),
RICHARD A. LINDEN and SCOTT T. VEECH,**

      Defendants.

---

**HOWARD A. STAHL, individually and on
behalf of all others similarly situated,**

      Plaintiff,

 v.                         **Case No. 06-C-356**

**MERGE TECHNOLOGIES, INC.,
(d.b.a. MERGE HEALTHCARE),
RICHARD A. LINDEN and SCOTT T. VEECH,**

      Defendants.

---

**KENNETH WEBER, Trustee for March VIII Trust,
individually and on behalf of all others
similarly situated,**

      Plaintiff,

 v.                         **Case No. 06-C-375**

**MERGE TECHNOLOGIES, INC.,
(d.b.a. MERGE HEALTHCARE),
RICHARD A. LINDEN and SCOTT T. VEECH,**

      Defendants.

---

**CARL BROTMAN**, individually and on behalf
of all others similarly situated,

                    Plaintiff,

    v.                                                    **Case No. 06-C-431**

**MERGE TECHNOLOGIES, INC.,**
**(d.b.a. MERGE HEALTHCARE),**
**RICHARD A. LINDEN and SCOTT T. VEECH,**

                    Defendants.

---

**GLYNN D. SMITH and ANNIE BELL SMITH,**
**on behalf of themselves and all others**
**similarly situated,**

                    Plaintiff,

    v.                                                      **Case No. 06-C-483**

**MERGE TECHNOLOGIES, INC.,**
**(d.b.a. MERGE HEALTHCARE),**
**RICHARD A. LINDEN and SCOTT T. VEECH,**

                    Defendants.

---

**JOHN E. DERZAL**, individually and behalf of
all others similarly situated,

                    Plaintiff,

    v.                                                   **Case No. 06-C-493**

**MERGE TECHNOLOGIES, INC.,**
**(d.b.a. MERGE HEALTHCARE),**
**BRIAN E. PEDLAR, RICHARD A. LINDEN**
**and SCOTT T. VEECH,**

                    Defendants.

---

**ROY JEZORSKI, individually and on behalf of all others similarly situated,**

                Plaintiff,

     v.                                                  **Case No. 06-C-519**

**MERGE TECHNOLOGIES, INC.,
(d.b.a. MERGE HEALTHCARE),
RICHARD A. LINDEN and SCOTT T. VEECH,**

                Defendants.

## DECISION AND ORDER

The above-captioned matters allege violations of the federal securities laws by the defendant, Merge Technologies, Inc. d/b/a Merge Healthcare ("Merge"). A variety of investors have moved, either separately or in combination, to consolidate these actions, to be appointed lead plaintiff for the class, and for approval of their respective selection of lead and liaison counsel for the class. All of the moving investors have moved for consolidation, but competing for appointment as lead or co-lead plaintiffs are the following groups: (1) the Employees' Retirement System of the Government of the Virgin Islands ("Virgin Islands"); (2) the General Retirement System of the City of Detroit ("City of Detroit") (3) the United Food and Commercial Workers Local 919 and Participating Employers' Good Pension Fund and Baxter Group ("UFCW/Baxter Group"); and (4) the Southwest Carpenters Pension Trust ("SWC").

After the first round of motions were filed on May 22, 2006, the Virgin Islands and the City of Detroit joined forces and moved for appointment as co-lead plaintiffs. The reasons for this maneuver will become obvious to the reader during the course of this opinion; suffice it to say, their strategy is unsuccessful. For the reasons that follow, the above-captioned matters are

consolidated, SWC's motion for appointment as lead plaintiff is granted, and SWC's selection of lead and liaison counsel is approved.

## BACKGROUND

Merge engages in the development and delivery of medical imaging and information management software and services. Merge is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. The complaints arise out of Merge's allegedly improper practices concerning its merger with Cedera Software Corporation ("Cedara"), announced in January 2005 and completed June 1, 2005. The complaints allege that from August 2, 2005 through March 16, 2006 (the "Class Period"), defendants misrepresented that the merger with Cedara was highly successful, but concealed the fact that: (1) Merge lacked adequate internal controls; (2) defendants improperly accounted for revenue and taxes relating to the Cedara merger; and (3) Merge's financial projections were irresponsible considering the knowledge defendants possessed concerning its actual financial situation. The complaints further allege that during the Class Period, with Merge's stock trading at artificially inflated prices, various company insiders sold 680,395 shares of stock for gross proceeds of over $29 million.

## CONSOLIDATION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides for the consolidation of related actions brought under the federal securities laws. Before ruling on the appointment of lead plaintiff, the Court must decide whether these separately-filed class actions should be consolidated. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). The above-captioned matters involve common questions of law and fact, revolving around class claims on behalf of investors who purchased or acquired Merge securities during the Class Period. They

allege similar claims under the federal securities law, will involve similar issues regarding class certification, and will be subject to overlapping discovery requests. Therefore, consolidation of these actions is appropriate. *See* Fed. R. Civ. P. 42(a).

## LEAD PLAINTIFF

The PSLRA was enacted "to increase the likelihood that institutional investors will serve as lead plaintiffs" because institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rep. No. 104-369, at 33, 34 (1995). Therefore, the PSLRA reflects a "presumption that institutional investors be appointed lead plaintiff." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").

The PSLRA has a variety of procedural and substantive requirements for appointment of lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3). First, the motion must be filed within sixty days of the publication of the first notice advising members of the purported plaintiff class. *See* 15 U.S.C. § 78u-4(a)(3)(A)(I). All of the outstanding motions satisfy this requirement.[1] More generally, the PSLRA provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereinafter in this paragraph referred to as the 'most adequate plaintiff')" 15 U.S.C. § 78u-4(a)(3)(B)(I). As

---

[1] The plaintiff in the first-filed action published a notice on March 22, 2006. The pending motions were filed on May 22, 2006.

guidance, the act provides that the "most adequate plaintiff" is presumptively the person, or group of persons, that in addition to filing a complaint or making a motion in response to the notice, (1) has the largest financial interest in the relief sought by the class, and (2) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). At this stage of the proceedings, only the typicality and adequacy of representation factors are considered under Rule 23. *See Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002).

The largest financial interest is determined by examining the following factors: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). Some courts also consider the net number of shares purchased. *See, e.g., Lax v. First Merchants Acceptance Corp.*, No. 97-C-2715, 1997 WL 461036 at *5 (N.D. Ill. Aug. 11 1997). In any event, courts generally agree that the most important factor is the amount of loss suffered by the plaintiff. *See, e.g., In re Bally Total Fitness Sec. Litig.*, No. 04-C-3530, 2005 WL 627960 at *4 (N.D. Ill. March 15, 2005) ("the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball"); *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923 at *16 (W.D. Wash. July 13, 2005) (the "most illuminating of the four factors, therefore, is the plaintiff's approximate loss, the only factor that makes no assumptions regarding the fraud premium. Calculating approximate loss

under the PSLRA damage cap provides the only objective measure of economic loss that does not depend on the fraud premium").

The four factors, with respect to each movant, are broken-down as follows:[2]

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Loss |
|---|---|---|---|---|
| SWC | 61,000 | **38,300** | **$1,191,840.60** | **$641,966.51** |
| Virgin Islands | **65,700** | 26,300 | 864,144.00 | 496,550.00 |
| City of Detroit | 21,600 | 21,600 | 586,513.00 | 284,745.00 |
| UFCW/ Baxter Group | 19,400 | 19,400 | 410,667.77 | 92,002.77 |

Therefore, following the first round of motions and briefing, SWC was the presumptive winner with the greatest amount of total loss. In subsequent briefing, UFCW/Baxter Group reasonably stated that "should the Court find that a movant with a larger financial interest than the UFCW/Baxter Group does not satisfy the typicality or adequacy elements of Rule 23, then the UFCW/Baxter Group should be appointed as Lead Plaintiff for the Class." (Docket No. 14, p. 4). The Virgin Islands and the City of Detroit, on the other hand, came together and filed a joint motion for appointment as co-lead plaintiffs, trumpeting the fact that their combined financial interest exceeds that of SWC.

The transparency of this maneuver is plain to see, and it has been consistently rejected by other courts in similar circumstances. The purpose behind the PSLRA was to prevent "lawyer-driven" litigation and to ensure that "parties with significant holdings in

---

[2] This table is reproduced from page four of SWC's June 15 Opposition to Competing Motions for Appointment of Lead Plaintiff, Docket No. 22. The other parties have slightly different numbers for some of the amounts listed, but the differences are insignificant for purposes of the Court's analysis.

issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions plaintiffs' counsel." *In re Flight Safety Techs., Inc. Sec. Litig.*, 231 F.R.D. 124, 129-30 (D. Conn. 2005). Allowing lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would "allow and encourage lawyers to direct the litigation." *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005). By enacting the PSLRA, Congress "hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff." *Id.* The Court will not sanction or award a strategy so clearly designed to thwart this purpose.

Virgin Islands/City of Detroit argue that they decided to join forces because they shared a common concern about whether SWC (or UFCW/Baxter Group) would be adequate under the standards set forth in Rule 23. Virgin Islands/City of Detroit refers to SWC as a "non-transparent" entity that has provided the Court "almost no information about itself beyond its name." (Docket No. 15, p. 2). However, just like the competing movants, SWC is an institutional investor, entitled to preferential status under the PLSRA. Moreover, SWC has served as lead plaintiff on a number of significant cases. *See, e.g., Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 20, 2004); *In re Northwestern Corp. Sec. Litig.*, No. CIV-03-4049 (D.S.D.); *Slone v. Fifth Third Bancorp*, No. 1:03-cv-00211-TMR (S.D. Ohio) (obtaining aggregate recoveries of more than $65 million for class members). SWC is a transparent fund with a record of success acting as lead plaintiff in other securities class action cases. *See* Declaration of Ronald A. Schoen, Docket No. 27-15. There is no real dispute about the adequacy of SWC to serve as lead plaintiff in this matter.

Virgin Islands/City of Detroit rely on *In re Able Labs Sec. Litig.*, 425 F. Supp. 2d 562 (D.N.J. 2006), where the court allowed two plaintiffs to join forces and aggregate their losses for purposes of determining who had the largest financial interest in the litigation. However, *Able Labs* is distinguishable because the Court was convinced that the group was formed by the actions of the clients, not the actions of counsel. *Id.* at 569. Furthermore, the plaintiff with the largest financial interest was an *individual* who had never before served as lead plaintiff, not an institutional investor with experience in securities litigation like SWC. SWC, as an institutional investor, can adequately represent the class.

Finally, SWC's claims meet the typicality requirement under Rule 23. This standard is met when a plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). SWC's claims arise from Merge's alleged fraudulent conduct and artificial inflation of its securities during the Class Period, the same course of conduct that damaged the entire class.

Because it has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23, SWC is presumptively entitled to lead plaintiff status. The question then is not "whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job." *In re Cendant*, 264 F.3d at 268; *see also In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job"). The competing movants have failed to

overcome the presumption that SWC is the most adequate plaintiff to serve as lead counsel in this matter.

## LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). This selection should not be disturbed unless necessary to "protect the interests of the [plaintiff] class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). SWC has selected Lerach Coughlin, a 160-lawyer law firm active in securities litigation, to serve as lead counsel. Lerach Coughlin has served as lead or co-lead counsel in a variety of landmark class action cases, including *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) and *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002). In *Enron*, the presiding judge found that Lerach Coughlin's submissions were exceptional in the "breadth and depth of its research and insight." *Enron*, 206 F.R.D. at 458. The Court has no trouble concluding that Lerach Coughlin will act competently in the best interests of the class. SWC has also selected Hale & Wagner as local counsel. The Court is familiar with this law firm and finds that it will also act to protect the interests of the class.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. All pending motions for consolidation of the following actions are **GRANTED**: Case No. 06-CV-349; Case No. 06-CV-356; Case No. 06-CV-375; Case No. 06-CV-431; Case No. 06-CV-483; Case No. 06-CV-493; Case No. 06-CV-519. Pursuant to Civil L.R. 42.1(b), all subsequent filings in this action will be docketed in Case No. 06-CV-

349. The Clerk of Court shall make a notation in all of the higher-numbered cases to check the docket sheet for Case No. 06-CV-349;

    2.    SWC's motion for appointment as lead plaintiff is **GRANTED**;

    3.    SWC's motion to appoint the law firm of Lerach Coughlin as lead counsel is **GRANTED**;

    4.    SWC's motion to appoint the law firm of Hale & Wagner as local or liaison counsel is **GRANTED**; and

    5.    All other pending motions in all of the above-captioned cases are **DENIED**.

Dated at Milwaukee, Wisconsin, this 21st day of November, 2006.

                **SO ORDERED:**

                **s/Rudolph T. Randa**
                **HON. RUDOLPH T. RANDA**
                **Chief Judge**