# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROSALIND MAIDEN,**

        Plaintiff,

    -vs-                                     Case No. 06-C-349

**MERGE TECHNOLOGIES,
RICHARD A. LINDEN and SCOTT T. VEECH,**

        Defendants.

## DECISION AND ORDER

This securities fraud class action relates to an alleged accounting fraud scheme perpetrated by Merge Technologies, Inc. ("Merge"), three of Merge's former officers (Richard Linden, Scott Veech, and David Noshay), and KPMG LLP ("KPMG"). On March 31, 2008, the Court issued an order which, among other things, dismissed the claims against KPMG and David Noshay. On June 20, the plaintiff[1] filed an amended complaint, attempting to re-assert its claims against KPMG. KPMG now moves to dismiss once again for failure to state a claim.[2] For the reasons that follow, KPMG's motion is granted, and the claims against KPMG are dismissed with prejudice.

---

[1] Previously, the Court consolidated this case with six other cases and appointed Southwest Carpenters Pension Trust (SWC) as lead plaintiff pursuant to the Private Securities Litigation Reform Act (PSLRA).

[2] The remaining defendants entered into a preliminary settlement agreement (D. 123), which is scheduled for an approval hearing on November 10, 2008 at 2 p.m. (CST).

Merge is headquartered in Milwaukee, Wisconsin, and engages in the development and delivery of medical imaging and information management software and services. Plaintiff claims that during the Class Period,[3] the defendants engaged in a massive accounting fraud designed to ensure that Merge consistently met or exceeded analysts' earnings estimates. KPMG was Merge's independent auditor during the Class Period. The fraudulent accounting techniques, according to the plaintiff, resulted in a material overstatement of Merge's net income that caused the price of Merge's stock to increase.

Plaintiff alleges that the defendants engaged in several manipulative practices that allowed Merge to improperly recognize revenues, specifically: (1) defendants purportedly entered into secret side agreements with its customers that reflected the contingent nature of sales contracts in order to prematurely recognize revenue; (2) defendants allegedly recognized revenue on products that were shipped to customers who never ordered the products; (3) defendants supposedly recognized revenue for products that plainly did not meet their customers' specifications; (4) defendants purportedly recognized revenue prior to shipping all the products that were included in the customer's contract; and (5) defendants allegedly recognized revenue on products it shipped to its customers free of charge.

Plaintiff attempts to state a claim against KPMG for violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b). Section 10(b) prohibits the "use . . . in connection with the purchase or sale of any security . . . of any manipulative or

---

[3] The Class Period is between April 25, 2002 and July 3, 2006.

deceptive device or contrivance." The SEC implemented § 10(b) pursuant to SEC Rule 10b-5, which makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of material fact necessary in order to make the statement made . . . not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

To state a claim for violation of these provisions, a plaintiff must allege that the defendant (1) made a material false statement or omission (2) with scienter (3) in connection with the purchase or sale of securities (4) upon which the plaintiff justifiably relied and (5) that the false statement or omission proximately caused damages. *See Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 595 (7th Cir. 2006), *vacated and remanded on other grounds*, 127 S. Ct. 2499 (2007).

KPMG argues that plaintiff's amended complaint fails to state a claim because it does not adequately allege scienter. Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Reckless disregard of the truth counts as intent for purposes of the § 10(b) scienter requirement. *See SEC v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998). "Reckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1255 (N.D Ill. 1997).

-3-

Case 2:06-cv-00349-RTR    Filed 10/20/08    Page 3 of 9    Document 134

Pursuant to the Private Securities Litigation Reform Act ("PSLRA") of 1995, Congress imposed a heightened pleading standard for securities actions, the purpose of which was to "curb perceived abuses of the § 10(b) private action – 'nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers.'" *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 127 S.Ct. 2499, 2508 (2007). Accordingly, for a § 10(b) action to survive a motion to dismiss, plaintiff must "state with particularity facts giving rise to a strong inference that defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A "strong inference" must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 127 S.Ct. at 2505. In other words, "first the inference must be cogent, and second it must be as cogent as the opposing inference." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 705 (7th Cir. 2008). Courts examine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 127 S.Ct. at 2509 (emphasis in original).

With respect to plaintiff's previous complaint, the Court observed that KPMG "made materially false statements when it issued its audit reports for fiscal years 2002, 2003, and 2004, and a false internal controls report for 2004. These reports inaccurately stated that Merge's financial statements were 'in conformity with accounting principles generally accepted in the United States of America' and that Merge had 'effective internal controls over financial reporting.'" (D. 114 at 19).

However, the Court held that the claims against KPMG "cannot survive because the allegations in the [Class Action Complaint] do not raise a strong inference of scienter. The CAC merely identifies the applicable accounting and auditing standards and alleges that KPMG violated them. Alleged violations of [Generally Accepted Accounting Principles], without more, does not create a strong inference of scienter." (D. 114 at 19-20). Therefore, the Court granted KPMG's motion to dismiss and dismissed KPMG as a defendant without prejudice. *See Great Neck Capital Appreciation Investment Partnership, L.P. v. Pricewaterhouse Cooper, LLC*, 137 F. Supp. 2d 1114, 1124 (E.D. Wis. 2001) ("violations of GAAP without more do not establish scienter"); *In re Complete Management Inc. Securities Litigation*, 153 F. Supp. 2d 314, 334 (S.D.N.Y. 2001) ("It is unambiguously the law that allegations of a violation of GAAP and [Generally Accepted Auditing Standards] are, without more, insufficient to survive a motion to dismiss").

Plaintiff's amended complaint makes repeated allegations that KPMG knew about the various side agreements utilized by Merge to manipulate its quarterly income. For example, many of the new allegations focus on a slide show presentation given by Merge's Special Litigation Committee ("SLC"), organized in response to a derivative suit filed in Wisconsin state court. The presentation makes various references to KPMG's knowledge of side agreements. *See* D. 117, Amended Complaint, Exhibit A at 12 (KPMG's "2000 and 2002 Audits noted oral side agreements"; KPMG's "Q1 '03 review 'noted the existence of a side letter' from Linden"). The complaint makes additional allegations regarding KPMG's ongoing awareness and knowledge of Merge's improper accounting techniques. *See* D. 117,

-5-

Amended Complaint at ¶ 265 (citing KPMG's April 19, 2002 management letter to Merge's Audit Committee recommending that Merge "should develop policies and procedures to consistently apply the authoritative literature with respect to revenue recognition" and "should formalize and document its policy for determining the credit worthiness of its customers prior to making a sale").[4]

In addition to the acknowledged use of "side agreements," plaintiff cites a variety of "red flags," including the use of bonuses and stock options as a significant portion of management's compensation (¶ 293); management's excessive interest in maintaining or increasing Merge's stock price or earning trend; management's use of unduly aggressive or clearly unrealistic forecasts; management's failure to display and communicate an appropriate attitude regarding internal controls and the financial reporting process; management's ineffective means of communicating and supporting the entity's values or ethics, or communication of inappropriate values or ethics; and management's failure to employ an internal audit staff. Overarching all of this is the magnitude and duration of the fraud. During the Class Period, Merge's net income was overstated by 30% (2002), 40% (2003), and 240% (2004).

Accordingly, plaintiff's argument on scienter amounts to the assertion that KPMG's audit "amounted to no audit at all, or to an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that

---

[4] *See also* ¶ 268 ("During 2002, we noted instances in which the Company conducted transactions based upon verbal modifications of written arrangements with customers"); ¶ 270 ("during the 2003 first quarter review, [KMPG] noted the existence of a side letter which precluded the Company from recognizing revenue on the related contract"); ¶ 271 ("[r]evenue recognition control deficiencies remain").

-6-

no reasonable accountant would have made the same decisions if confronted with the same facts." *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 718 (N.D. Ill. 2005). In other words, given KPMG's knowledge of side agreements and the underlying "red flags" discussed above, plaintiff alleges that KPMG acted with intent to deceive, manipulate, or defraud when it issued its audit reports for fiscal years 2002, 2003, and 2004, and a false internal controls report for 2004.

These facts do not establish a strong, cogent inference of scienter. Plaintiff offers no explanation for why KPMG repeatedly advised Merge that side agreements were improper. If KPMG were participating in the fraud or turning a blind eye, it would make little sense for them to highlight and document the existence of accounting errors and to advise that they should be corrected. Aside from the continued collection of its professional fees, Merge also fails to articulate KPMG's motive for participating in the fraud. *See ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 245 n.51 (S.D.N.Y. 1997) ("the fact that the professional service firms like [defendant] receive fees for their services is insufficient to supply the motive essential to the motive-and-opportunity theory . . .").

In contrast, KPMG's competing inference of non-fraudulent intent is much stronger. It is a more cogent inference because it comports with KPMG's repeated warnings about improper transactions and side agreements. It also comports with the SLC presentation, which explained that Merge falsely represented to its *auditors* that "there are no side agreements with customers." Amended Complaint, Ex. A at 12. In fact, Merge admits that its former management circumvented accounting controls to execute the fraud, ¶ 208, so the

-7-

inference that Merge deceived its investors *and* KPMG is compelling. Finally, it is undisputed that Merge's new management terminated those it considered responsible for the fraud, but still retained KPMG for accounting services.[5]

Ultimately, the mere fact that KPMG's audit failed to prevent the ongoing fraud at Merge is not enough to establish scienter. *See, e.g., Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759-60 (7th Cir. 2007) ("Hindsight is the only basis of the proposed inference – and, as the Court observed in *Tellabs*, citing a famous opinion by Judge Friendly, there is no 'fraud by hindsight'"). KPMG's competing, more cogent inference of non-fraudulent intent mandates that the amended complaint against KPMG be dismissed.

While the Court's prior dismissal left the door open for the plaintiff to amend, this time the door will be closed. The "purpose of the PSLRA's heightened pleading requirements and stay of discovery were to prevent 'harassing strike suits filed the moment a company's stock price falls,' . . . the PSLRA 'could not achieve this purpose if plaintiffs were allowed to amend and amend until they got it right.'" *Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 690 (6th Cir. 2003); *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 722-23 (E.D. Va. 2003) ("Only dismissal of insufficient complaints without leave to amend preserves the teeth of the Reform Act"). Even under Rule 15(a)(2)'s more liberal standard, any additional attempts to state a claim against KPMG are likely to be futile. *See Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 801 (7th Cir. 2004) (leave to amend a complaint may be denied on futility grounds).

---

[5] Merge recently switched audit firms, but this occurred a year and a half after the audit committee indicated that the "responsible individuals" were terminated. Second Amended Complaint, Exhibit A at 27.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. KPMG's motion to dismiss the plaintiff's second amended complaint [D. 127] is **GRANTED**; and

2. Plaintiff's claims against KPMG are **DISMISSED** with prejudice.

Dated at Milwaukee, Wisconsin, this 20th day of October, 2008.

**SO ORDERED,**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**Chief Judge**